UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
ROCK ISLAND DIVISION

| | | |
|---|---|---|
| MARILYN R. | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 4:18-cv-04098-SLD-JEH |
| | ) | |
| ANDREW SAUL,[1] | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

ORDER

Plaintiff Marilyn R. filed an application for disability insurance benefits.  The

Commissioner of the Social Security Administration ("SSA") ("the Commissioner") denied her

application.  Marilyn seeks judicial review of this decision pursuant to 42 U.S.C. § 405(g).

Compl., ECF No. 1.  Before the Court are Marilyn's Motion for Summary Judgment, ECF No.

10, the Commissioner's Motion for Summary Affirmance, ECF No. 14, and Magistrate Judge

Jonathan Hawley's Report and Recommendation ("R&R"), ECF No. 17, which recommends

denying Marilyn's motion and granting the Commissioner's motion.  For the reasons that follow,

the R&R is ADOPTED.  Marilyn's Motion for Summary Judgment is DENIED and the

Commissioner's Motion for Summary Affirmance is GRANTED.

### I.      Report and Recommendation

When a magistrate judge considers a pretrial matter dispositive of a party's claim or

defense, he must enter a recommended disposition.  Fed. R. Civ. P. 72(b)(1).  Parties may object

within fourteen days of being served with a copy of the recommended disposition.  *Id.* 72(b)(2).

---

[1] Pursuant to Federal Rule of Civil Procedure 25(d), Andrew Saul is substituted for his predecessor.  The Clerk is
directed to update the docket accordingly.

The district judge considers de novo the portions of the recommended disposition that were properly objected to, and may accept, reject, or modify the recommended disposition, or return it to the magistrate judge for further proceedings. *Id.* 72(b)(3). If no objection, or only partial objection, is made, the district judge reviews the unobjected portions of the recommendation for clear error. *Johnson v. Zema Sys. Corp.*, 170 F.3d 734, 739 (7th Cir. 1999).

Here, Marilyn filed objections to the R&R, but they were filed more than fourteen days after the R&R was entered. *See* Objections, ECF No. 18. The deadline for filing objections to a magistrate judge's recommended disposition is not jurisdictional, however, so the Court is not barred from considering Marilyn's objections. *See Kruger v. Apfel*, 214 F.3d 784, 786–87 (7th Cir. 2000). Although she provides no explanation for not meeting the deadline, the objections were only two days late and no prejudice would result from the Court's consideration of the late objections. *See id.* at 787 (noting that courts should consider whether the late objections caused any prejudice to the opposing party and whether the objections were filed "egregiously late" (quoting *Hunger v. Leininger*, 15 F.3d 664, 668 (7th Cir. 1994))). Therefore, the Court will consider Marilyn's objections.

The R&R sets forth the relevant procedural background, including an overview of the administrative law judge's ("ALJ") decision, so the Court will not repeat that discussion here. *See* R&R 1–9. It also sets forth the three arguments Marilyn makes in her summary judgment motion:

> 1) as a matter of law, the agency denial which is the final agency action, the ALJ's unfavorable decision, is not valid and must be vacated because the ALJ was not properly appointed and therefore lacked legal authority to decide the case; 2) in determining Marilyn's RFC, the Defendant's ALJ did not follow correct legal standards evaluating expert medical opinion evidence, and as a result, her decision is not supported by substantial evidence in the record as a whole, and is actually inconsistent with the record evidence; and 3) the Defendant's ALJ failed

to credit Marilyn's statements, including sworn statements, and did not explain
good reasons.

*Id.* at 9.  Judge Hawley recommends rejecting all three arguments and affirming the

ALJ's decision.  *Id.* at 23.

 Marilyn has three objections to the R&R.  First, she objects to Judge Hawley's

finding that she forfeited her challenge to the ALJ's appointment.  Objections 1–2.

Second, she objects to Judge Hawley's conclusion that the ALJ did not reversibly err in

considering the medical opinion evidence.  *Id.* at 2–3.  And third, she objects to Judge

Hawley's conclusion that the ALJ did not reversibly err in discounting her statements

about her limitations.  *Id.* at 3–4.  The Court considers these issues de novo.  The Court

has reviewed the remainder of the R&R for clear error and found none.

   **II.    Analysis**

The court reviews a decision denying benefits to determine only whether the ALJ applied

the correct legal standard and whether substantial evidence supports the ALJ's decision.  *Barnett*

*v. Barnhart*, 381 F.3d 664, 668 (7th Cir. 2004).  Substantial evidence means "such relevant

evidence as a reasonable mind might accept as adequate to support a conclusion."  *McKinzey v.*

*Astrue*, 641 F.3d 884, 889 (7th Cir. 2011) (quotation marks omitted).  On review, the court

cannot reweigh the evidence, decide questions of credibility, or substitute its own judgment, but

must "nonetheless conduct a critical review of the evidence."  *Id.*  The ALJ does not have "to

provide a complete and written evaluation of every piece of testimony and evidence, but must

build a logical bridge from the evidence to his conclusion."  *Minnick v. Colvin*, 775 F.3d 929,

935 (7th Cir. 2015) (quotation marks omitted).  The court must "be able to trace the path of the

ALJ's reasoning from evidence to conclusion."  *Aranda v. Berryhill*, 312 F. Supp. 3d 685, 689

(N.D. Ill. 2018).  If the ALJ's decision lacks adequate discussion of the issues, the court must

remand for further proceedings. *Villano v. Astrue*, 556 F.3d 558, 562 (7th Cir. 2009). If the

ALJ's errors are harmless, however, the court will not remand. *See, e.g.*, *McKinzey*, 641 F.3d at

892 ("[A]dministrative error may be harmless: we will not remand a case to the ALJ for further

specification where we are convinced that the ALJ will reach the same result."); *Musgrove v.*

*Berryhill*, No. 17 CV 50117, 2018 WL 1184734, at \*5 (N.D. Ill. Mar. 7, 2018) ("The harmless

error analysis looks to evidence in the record to see if the court can predict with great confidence

what the result will be on remand.").

### a. Appointments Clause

The parties agree that Marilyn did not bring an Appointments Clause challenge at the

administrative level. *See* Mem. Supp. Mot. Summ. J. 9, ECF No. 11 (arguing that the district

court was the "earliest possible time" to raise the claim); Mem. Supp. Mot. Summ. Affirmance 4,

ECF No. 15 ("Plaintiff's failure to assert a challenge to the ALJ's appointment before the agency

at any point in the administrative proceedings forfeited her Appointments Clause claim."). They

disagree, however, about what impact that has on her ability to assert the claim before this Court.

The Commissioner argues that Marilyn forfeited her Appointments Clause challenge by not

raising it in the administrative proceeding; Marilyn argues that she need not have raised the issue

before the agency to preserve it.

The majority of district courts to consider this issue have adopted the Commissioner's

position. *See, e.g.*, *Gilbert v. Comm'r of Soc. Sec.* No. 3:18CV2026, 2019 WL 2281247, at \*2

(N.D. Ohio May 29, 2019); *Muhammad v. Berryhill*, 381 F. Supp. 3d 462, 465–71 (E.D. Pa.

2019); *Burr v. Comm'r of Soc. Sec.*, No. 5:18-CV-518-Oc-18PRL, 2019 WL 3821572, at \*2–4

(M.D. Fla. May 17, 2019), *report and recommendation adopted*, 2019 WL 3817486 (M.D. Fla.

Aug. 14, 2019); *Fortin v. Comm'r of Soc. Sec.*, 372 F. Supp. 3d 558, 562–68 (E.D. Mich. 2019),

*appeal filed*, 19-1581 (6th Cir. May 24, 2019); *Diane S. P. v. Berryhill*, 379 F. Supp. 3d 498,

504–06 (E.D. Va. 2019), *appeal filed*, 19-1681 (4th Cir. June 25, 2019); *Flack v. Comm'r of Soc.*

*Sec.*, No. 2:18-CV-00501, 2019 WL 1236097, at *2–3 (S.D. Ohio Mar. 18, 2019); *Abbington v.*

*Berryhill*, No. 1:17-00552-N, 2018 WL 6571208, at *1–9 (S.D. Ala. Dec. 13, 2018).  A growing

minority of courts, however, have addressed the merits of Appointments Clause challenges even

if they were not raised before the SSA.  *See, e.g.*, *Hill v. Saul*, No. 18-5564, 2019 WL 3573499,

at *2–6 (E.D. Pa. Aug. 6, 2019); *Kim L. M. v. Saul*, No. 18-CV-418-FHM, 2019 WL 3318112, at

*5–6 (N.D. Okla. July 24, 2019); *Bradshaw v. Berryhill*, 372 F. Supp. 3d 349, 352–62 (E.D.N.C.

2019), *appeal filed sub. nom. Bradshaw v. Saul*, 19-1531 (4th Cir. May 17, 2019); *Bizarre v.*

*Berryhill*, 364 F. Supp. 3d 418, 419–425 (M.D. Pa. 2019).  The Court agrees with the majority

position that a Social Security claimant must have raised an Appointments Clause challenge

during the administrative proceeding to preserve judicial review of the challenge.

      The Appointments Clause of the Constitution provides that the President has the sole

power to appoint officers of the United States, but that Congress can "vest the Appointment of

such inferior Officers, as they think proper, in the President alone, in the Courts of Law, or in the

Heads of Departments."   U.S. Const. art. II, § 2, cl. 2.  In *Lucia v. Securities & Exchange*

*Commission*, 138 S. Ct. 2044, 2054 (2018), the Supreme Court held that ALJs of the Securities

and Exchange Commission ("SEC") were inferior officers of the United States, so the

Constitution required them to be appointed by the Commissioner of the SEC, the President, or a

court of law.  Because the ALJ who presided over the plaintiff's administrative hearing was not

so appointed, but instead was hired by SEC employees, the Court vacated the administrative

judgment and remanded for a new hearing by a properly appointed ALJ.  *Id.* at 2055.  Marilyn

argues that, like SEC ALJs, the SSA ALJ that presided over her hearing is an inferior officer and

was not lawfully appointed under the Appointments Clause.[2]  *See* Objections 1; Mem. Supp.

Mot. Summ. J. 7.

In *Lucia*, 138 S. Ct. at 2055, the Supreme Court explained that "'one who makes a timely

challenge to the constitutional validity of the appointment of an officer who adjudicates his case'

is entitled to relief." (quoting *Ryder v. United States*, 515 U.S. 177, 182–83 (1995)).  The

petitioner in *Lucia* had made a timely challenge because "[h]e contested the validity of [the

administrative law judge's] appointment before the [SEC], and continued pressing that claim in

the Court of Appeals and th[e Supreme] Court."  *Id.*  The Commissioner argues that Marilyn did

not present a timely challenge to the ALJ's validity because she did not raise the issue during her

administrative proceeding.  Marilyn argues that the SEC administrative process differs from the

SSA process and that exhaustion of issues is not required in Social Security cases.  Mem. Supp.

Mot. Summ. J. 8–9.

*Lucia* does not define what makes a challenge timely.  It holds that raising an

Appointments Clause claim before the administrative agency is sufficient, but does not define

what is necessary.  It is well-settled that a Social Security claimant need not "exhaust issues in a

request for review by the Appeals Council in order to preserve judicial review of those issues."

*Sims v. Apfel*, 530 U.S. 103, 112 (2000).  But the question of "[w]hether a claimant must exhaust

issues before the ALJ" remains undecided.  *Id.* at 107.

Issue exhaustion requirements "are largely creatures of statute," but can be imposed

"even in the absence of a statute or regulation" if appropriate.  *Id.* at 107–08.  "[C]ourts require

administrative issue exhaustion 'as a general rule' because it is usually 'appropriate under [an

agency's] practice' for 'contestants in an adversary proceeding' before it to develop fully all

---

[2] The Commissioner does not argue for purposes of this motion that ALJs are employees, rather than officers, who are not subject to the Appointments Clause.  *See* Mem. Supp. Mot. Summ. Affirmance 4 n.1.

issues there." *Id.* at 109 (alteration in original) (quoting *United States v. L.A. Tucker Truck Lines, Inc.*, 344 U.S. 33, 36–37 (1952)). "[T]he desirability of a court imposing a requirement of issue exhaustion depends on the degree to which the analogy to normal adversarial litigation applies in a particular administrative proceeding." *Id.* "Where the parties are expected to develop the issues in an adversarial administrative proceeding . . . the rationale for requiring issue exhaustion is at its greatest." *Id.* at 110.

In holding that a claimant need not exhaust issues before the Appeals Council, the Supreme Court focused on the inquisitorial nature of Social Security proceedings and the broadness of the Appeals Council's review. *Id.* at 110–11. Social Security regulations provide: the Council's review is plenary unless otherwise stated, 20 C.F.R. § 404.976(a); a party is not required to file a brief, *id.* § 404.975; and the Council considers the entire record to determine whether to review a case, *see id.* § 404.970(a). Moreover, the Council can initiate its own review. *Id.* § 404.969(a). These regulations show that "[t]he Council, not the claimant, has primary responsibility for identifying and developing the issues." *Sims*, 530 U.S. at 112. Because the "analogy to judicial proceedings" is weak with respect to Council review, the Court held that imposing an issue exhaustion requirement would be inappropriate. *Id.*

At the ALJ level, the claimant has more responsibility for identifying the issues. The claimant must file a written request for a hearing in front of an ALJ, which should include "[t]he reasons [the claimant] disagree[s] with the previous determination or decision." 20 C.F.R. § 404.933(a)(2). The ALJ provides a list of the issues to be decided at the hearing, but if a claimant disagrees with the list, she "must notify the administrative law judge in writing at the earliest possible opportunity." *Id.* § 404.939. And the ALJ must notify the parties "if he or she

will consider any new issue." *Id.* § 404.946(b)(2).[3] An ALJ does not have the same ability as the Council to address the issues he wants to without input from the claimant. And the claimant has a greater ability to raise issues herself. The ALJ level is, therefore, more adversarial than the Council level and there is reason to impose a judicial requirement of issue exhaustion, even in the absence of a statutory or regulatory requirement.

A few other considerations convince the Court that an Appointments Clause issue must be brought first to the SSA. First, the SSA has "no occasion to identify" an Appointments Clause issue—a purely legal challenge to the ALJ's validity—as part of its duty to investigate a claimant's disability. *Diane S.P.*, 379 F. Supp. 3d at 505; *see also Muhammad*, 381 F. Supp. 3d at 467. If not identified by the claimant, the issue will not be addressed. Second, "orderly procedure and good administration require that objections to the proceedings of an administrative agency be made while it has opportunity for correction." *L.A. Tucker Truck Lines*, 344 U.S. at 37. Marilyn did not give the SSA an opportunity to correct the issue.[4] Lastly, one of the reasons to impose an issue exhaustion requirement is to discourage "the practice of 'sandbagging': suggesting or permitting, for strategic reasons, that the trial court pursue a certain course, and later—if the outcome is unfavorable—claiming that the course followed was reversible error." *Freytag v. Comm'r of Internal Revenue*, 501 U.S. 868, 895 (1991) (Scalia, J., concurring). To allow a claimant to raise an Appointments Clause challenge for the first time in court would encourage sandbagging: a claimant could proceed with a hearing and then, only if she lost, argue

---

[3] Moreover, the claimant must notify the ALJ "at [the] earliest opportunity" if she objects to the ALJ conducting the hearing. 20 C.F.R. § 404.940. Although this provision specifically speaks to prejudice and partiality, it indicates that an issue with the ALJ must be raised to the ALJ first.

[4] In July 2018, "the Acting Commissioner ratified the appointment of ALJs . . . and approved their appointments as her own in order to address any Appointments Clause questions involving SSA claims." Important Information Regarding Possible Challenges to the Appointment of Administration Law Judges in SSA's Administrative Process-UPDATE, EM-18003 REV 2, Social Security Administration, https://secure.ssa.gov/apps10/reference.nsf/links/08062018021025PM (last visited September 13, 2019). The SSA could have taken this action at any time.

in court that the administrative proceeding was invalid because the ALJ was not properly appointed to get a new hearing in front of a different ALJ. *See Muhammad*, 381 F. Supp. 3d at 469–70.

Marilyn was required to raise her Appointments Clause challenge at the administrative level. She did not[5] and she has therefore forfeited the issue.

### b. Medical Opinion Evidence

Marilyn argues that the ALJ erred by failing to consider the treating source opinion from Dr. Wesp and that remand is required for him to do so. Objections 2. Social Security regulations provide that an ALJ will "evaluate every medical opinion [the SSA] receive[s]." 20 C.F.R. § 404.1527(c). In evaluating medical opinions, the ALJ must consider the following factors: 1) examining relationship; 2) treatment relationship; 3) supportability; 4) consistency; 5) specialization; and 6) other factors. *Id.* § 404.1527(c)(1)–(6). "If [th]e [ALJ] find[s] that a treating source's medical opinion on the issue(s) of the nature and severity of your impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in your case record, [he] will give it controlling weight." *Id.* § 404.1527(c)(2).

All parties concede that the ALJ erred by not considering Dr. Wesp's August 2015 opinion. But the Court agrees with the Commissioner that the failure to address this opinion was harmless. "[A]dministrative error may be harmless." *McKinzey*, 641 F.3d at 892. Courts should "not remand a case to the ALJ for further specification where [they] are convinced that the ALJ

---

[5] Marilyn argues that she could not have raised her Appointments Clause challenge at the administrative level because "[n]o one knew, until *Lucia* . . . that SSA ALJs were not legally appointed." Mem. Supp. Mot. Summ. J. 9. She argues that she raised her Appointments Clause challenge at "the earliest possible time." *Id.* But *Lucia* did not recognize a new argument or a new right; it was a straightforward application of *Freytag*. *See Lucia*, 138 S. Ct. at 2053 ("*Freytag* says everything necessary to decide this case."). Marilyn could have argued that the ALJ was unconstitutionally appointed prior to *Lucia*, but she did not. *See Burr*, 2019 WL 3821572, at \*2.

will reach the same result" because "[t]hat would be a waste of time and resources for both the Commissioner and the claimant." *Id.* Courts "look at the evidence in the record to see if [they] can predict with great confidence what the result on remand will be." *Id.*

Here, the Court can predict with great confidence that little weight would be given to Dr. Wesp's opinion and it would not change the ALJ's decision. Although the opinion was from a treating physician, it was not "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and it was "inconsistent with the other substantial evidence in [the] case record." *See* 20 C.F.R. § 404.1527(c)(2). Despite being prompted to do so, Dr. Wesp cited to little evidence beyond stating Marilyn's diagnoses to support his conclusions. *See* R. 617–19.[6] The opinion was also two years old at the time of the hearing and newer opinions from Marilyn's providers were less restrictive than Dr. Wesp's opinion. *Compare* R. 617 (Dr. Wesp opining that Marilyn must elevate her legs at all times when not on her feet), *with* R. 1044 (Nurse Practitioner Burgard opining that Marilyn need only elevate her legs for an hour a day).

Moreover, the ALJ considered and gave great weight to the opinion of Dr. Nenaber, a state agency reviewer. Dr. Nenaber's opinion addressed Dr. Wesp's opinion, finding that it deserved only some consideration due to its age and inconsistency with Dr. Wesp's treatment records. The Court can predict with great confidence that the ALJ would similarly give Dr. Wesp's opinion only some consideration. *Cf. Prochaska v. Barnhart*, 454 F.3d 731, 736–37 (7th Cir. 2006) (holding that it was harmless error for the ALJ to fail to specifically address the claimant's obesity because he adopted limitations suggested by doctors who considered the claimant's obesity). This error does not provide a reason for the Court to remand this case.

---

[6] The administrative record can be found at ECF No. 7. Citations to the record take the form: R. ___.

Marilyn also states, without further explanation, that she could not find an "argument for or against the Magistrate's contention of 'nitpicking.'" Objections 3. The Court notes that the Seventh Circuit has held that "[i]n analyzing an ALJ's opinion for . . . fatal gaps or contradictions, [a court must] give the opinion a commonsensical reading rather than nitpicking at it." *Shramek v. Apfel*, 226 F.3d 809, 811 (7th Cir. 2000) (quotation marks omitted). Judge Hawley concluded that many of Marilyn's arguments "amount to nitpicking." R&R 18. These arguments focus on particular lines from the ALJ's decision without reading the decision as a whole. For example, Marilyn argues: "As for the [state agency reviewers'] opinions being consistent with the [consultative examiner's] opinion, that would not actually be supportive of the ALJ's mental RFC since, as the ALJ himself said, the mental CE did not provide any opinion as to the severity of Plaintiff's mental limitations of functioning." Mem. Supp. Mot. Summ. J. 12. Although the ALJ gave the two consultative examiners' examinations "partial weight," he never stated that they offered opinions. R. 27. Accordingly, he never stated that the agency reviewers' opinions on Marilyn's mental limitations were consistent with the consultative examiner's *opinion*. Rather, he wrote that the state agency reviewers' opinions were "particularly consistent with . . . [the consultative] examination." *Id*. Marilyn's alleged errors "represent the type of nitpicking of the ALJ's decision that [courts] refuse to engage in." *See Burnam v. Colvin*, 525 F. App'x 461, 464 (7th Cir. 2013) (quotation marks omitted) (finding that the plaintiff's "kitchen-sink approach, listing nearly a dozen perceived errors in the ALJ's medical summary" amounted to nitpicking).

### c. Marilyn's Statements

Marilyn also objects to Judge Hawley's analysis of her statements about her limitations, but the bounds of her objection are not quite clear.[7] *See* Objections 3. At the outset, the Court notes that Judge Hawley did not necessarily "agree[] with the ALJ's credibility determination" by finding that the ALJ did not commit reversible error. *See id.* Even if a court would assess the claimant's subjective symptoms differently, it "overturn[s] an ALJ's subjective symptom assessment 'only if the decision is patently wrong, meaning it lacks explanation or support,'" *Ronald B. v. Saul*, No. 18 C 5881, 2019 WL 3778070, at *5 (N.D. Ill. Aug. 12, 2019) (quoting *Cullinan v. Berryhill*, 878 F.3d 598, 603 (7th Cir. 2017)), or "if the ALJ fails to build an 'accurate and logical bridge' between the evidence and her conclusions," *id.* (quoting *Ribaudo v. Barnhart*, 458 F.3d 580, 584 (7th Cir. 2006)).

The Court finds no reason to depart from Judge Hawley's conclusion. Social Security Regulation ("SSR") 16-3p, 2017 WL 5180304 (Oct. 25, 2017),[8] sets forth a two-step analysis an ALJ must follow when evaluating a claimant's subjective symptoms. First, the ALJ must consider whether the individual has a medically determinable impairment "that could reasonably be expected to produce an individual's symptoms." *Id.* at *3. If she does, the ALJ must "evaluate the intensity and persistence of those symptoms to determine the extent to which the symptoms limit [the] individual's ability to perform work-related activities." *Id.* At the second step, the ALJ must consider "the entire case record, including the objective medical evidence; an individual's statements about the intensity, persistence, and limiting effects of symptoms;

---

[7] It appears that Marilyn reproduced this section of her Objections from the memorandum in support of her summary judgment motion. *Compare* Objections 3–4, with Mem. Supp. Mot. Summ. J. 19–20, ECF No. 11. She does not specifically identify any error on Judge Hawley's part.

[8] SSRs "are interpretive rules intended to offer guidance to agency adjudicators. While they do not have the force of law or properly promulgated notice and comment regulations, the agency makes SSRs binding on all components of the Social Security Administration." *Nelson v. Apfel*, 210 F.3d 799, 803 (7th Cir. 2000) (citation and quotation marks omitted); *see* 20 C.F.R. § 402.35(b)(1).

statements and other information provided by medical sources and other persons; and any other relevant evidence in the individual's case record." *Id.* at \*4.

Here, the ALJ considered the evidence in accordance with SSR 16-3p and provided reasons for discounting Marilyn's testimony regarding the intensity, persistence, and limiting effects of her symptoms. Marilyn objects to the ALJ's consideration of "what he perceived as limited treatment." Objections 3. She points to a statement she made during the hearing that she was on Medicaid and not getting the medications that she needed to suggest that the ALJ should not have assigned such weight to her failure to obtain more serious treatment. At the hearing, in response to a question about the status of her lupus and fibromyalgia, Marilyn said that she was in constant pain and because she was on Medicaid, she was not getting the medications that she needed. R. 46. But the record shows that she was prescribed and took medication and there was no suggestion that being on Medicaid kept her from obtaining different, more serious treatment.

Marilyn also argues, without much explanation, that the "pieces of evidence" the ALJ relied on did not establish work capacity. Objections 4. The ALJ considered the objective medical evidence (treatment notes and examinations), the opinion evidence, and other evidence in the record, like Marilyn's testimony about her symptoms and limitations, her daily activities, and her work history, to determine Marilyn's residual functional capacity. *See* R. 21–28. The ALJ is "not only allowed to, but indeed must, weigh the evidence and make appropriate inferences from the record." *Seamon v. Astrue*, 364 F. App'x 243, 247 (7th Cir. 2010) (citing *Young v. Barnhart*, 362 F.3d 995, 1001 (7th Cir. 2004)). The Court can follow the ALJ's reasoning and cannot reweigh the evidence to come to a different conclusion than the ALJ.[9]

---

[9] Marilyn also argues that "[t]he ALJ may not play doctor." Objections 4. But she does not explain how the ALJ did this, and the Court does not think the principle applies where she does not argue that the ALJ made his own medical findings. *See Goins v. Colvin*, 764 F.3d 677, 680 (7th Cir. 2014) (noting that the ALJ impermissibly played

**III.    Conclusion**

Accordingly, the Report and Recommendation, ECF No. 17, is ADOPTED.  Plaintiff

Marilyn R.'s Motion for Summary Judgment, ECF No. 10, is DENIED and the Commissioner's

Motion for Summary Affirmance, ECF No. 14, is GRANTED.  Pursuant to sentence four of 42

U.S.C. § 405(g), the Commissioner's decision is AFFIRMED.  The Clerk is directed to enter

judgment and close the case.

Entered this 13th day of September, 2019.

s/ Sara Darrow
SARA DARROW
CHIEF UNITED STATES DISTRICT JUDGE

---

doctor by "summariz[ing] the results of [a] 2010 MRI in barely intelligible medical mumbo jumbo" instead of submitting the MRI to medical scrutiny).